IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2013

**LORENZA ZACKERY v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-A-941     Seth Norman, Judge**

**No. M2013-00718-CCA-R3-PC - Filed December 19, 2013**

The petitioner, Lorenza Zackery, appeals the denial of his petition for post-conviction relief. The petitioner pled guilty to two counts of rape of a child and received concurrent sentences of twenty years. He contends that his plea was not knowingly and voluntarily entered. He claims he was coerced into accepting the plea by trial counsel's actions and deficient performance. Following review of the record, we affirm the denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Chelsea Nicholson, Nashville, Tennessee, for the appellant, Lorenza Zackery.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Sharon Reddick, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History**

The petitioner entered a plea agreement in this case to two counts of rape of a child. The underlying factual basis for the plea, as recited at the guilty plea hearing, was:

Had this matter . . . proceeded to trial, the State's proof as to Counts I and II of the Indictment would be that on two separate and distinct occasions, sometime after the family moved to Davidson County in June of 2003 and before the victim named in the indictments birthday which is 7/27/91, [the

petitioner] did engage in unlawful sexual penetration of the victim named in the Indictment, who was at the time a child less than 13 years of age, and that these events occurred at the family's residence on George Gaines Drive in Bellevue.

Although pleading guilty to only two counts of rape of a child, the petitioner had originally been indicted by a Davidson County grand jury for six counts of rape a child, seven counts of rape, three counts of statutory rape by an authority figure, and one count of especially aggravated sexual exploitation of a minor. The victim in the case was the petitioner's stepdaughter. At the guilty plea hearing, the petitioner stated that he was not suffering from any mental illnesses, was not under the influence of any medications, and was satisfied with trial counsel's performance. He specifically testified that he was freely and voluntarily entering the plea.

Thereafter, the petitioner filed a timely pro se petition for post-conviction relief. After counsel was obtained, an amended petition was also filed. The petitioner asserts, among other grounds, ineffective assistance of counsel which resulted in the plea not being entered knowingly and voluntarily. A hearing was held on the petition at which the petitioner and trial counsel testified.

The forty-five year old petitioner testified that he had attended college and that, prior to his arrest, he worked as a nurse. He indicated that he had been incarcerated for over two years before he entered the plea. He also testified that this was his first conviction for any crime. The petitioner stated that he entered the plea because trial counsel used "coercion, intimidation, and [his] ignorance of the criminal proceedings."

According to the petitioner, he met with trial counsel on the Friday before he was scheduled to go to trial on Monday. He stated that trial counsel denied telling him that the State was going to take three years off his sentence previously, and he became upset with trial counsel. The petitioner then stated he told trial counsel that "there wouldn't be a trial Monday." The petitioner then walked out of the room, and trial counsel followed. The petitioner stated that he heard trial counsel say "nobody walks out on me." Afterwards, the petitioner was returned to his pod, but the mental health people approached him and placed him in a holding cell. According to the petitioner's testimony, they asked him what he and trial counsel had discussed, and he informed them that it was confidential. At that point, the worker placed the petitioner on suicide watch. The petitioner claims this was done at the request of trial counsel, whom he claimed used his "power and authority" to get him "locked up" because he was upset with him.

The petitioner stated that he was kept on suicide watch all weekend. He testified that

he was stripped naked, given a very small blanket, was freezing, had a bright light shining on him, and was, in general, humiliated. He testified that he had never taken any mental health medication or had any condition and that this was the first time he was ever placed on suicide watch during his incarceration. The petitioner did not deny that he made the statement that there would not be a trial on Monday; however, he stated that he meant that he was going to fire trial counsel rather than commit suicide. He insisted that he was not suicidal.

The following Monday, the petitioner asked trial counsel why he had had him placed on suicide watch. While in the courtroom on the day of trial, trial counsel showed the petitioner a twenty-year plea agreement that the State had offered. Because that was the highest offer from the State, the petitioner testified that he became upset and started crying. He testified that he begged trial counsel to help him. According to the petitioner, trial counsel leaned back in his chair and told him that he should have taken the earlier offers which had been for a lesser sentence. The petitioner testified that trial counsel told him to "do it for [his] family." He also testified that trial counsel repeatedly told him that if he did not accept the plea agreement, he would spend the rest of his life in prison. The petitioner also testified that while he was seated in the back of the courtroom, a court employee approached him and told him that he should accept the plea because she had worked for the judge for thirty years, and, if he was found guilty, he would get the maximum possible sentence. The petitioner felt he was pressured and coerced into accepting the agreement.

The petitioner maintained that the sexual activity with the victim was consensual and that he did not rape her. He testified that he did not accept the prior plea agreement because he did not want to plead guilty to an offense he did not commit. He felt that he should be allowed to plead to statutory rape by an authority figure, rather than rape of a child. The petitioner acknowledged that trial counsel did talk to the victim and got a statement from her in which she recanted some of her previous statements. She specifically stated in the recantation that no sexual activity had occurred until she was thirteen. He also acknowledged that trial counsel did have the victim take a polygraph test, which she passed, during which she stated that no sex had occurred before the age of thirteen. He also acknowledged that trial counsel had met with him on numerous occasions and reviewed discovery with him. Nonetheless, he did not believe that trial counsel was prepared for trial. The petitioner testified that trial counsel should have done a better job using the information he discovered to prepare for trial instead of merely pressuring him to plead guilty.

The petitioner testified that trial counsel did not spend a great deal of time reviewing the offer from the State on the day of the scheduled trial. The petitioner did acknowledge that he stood before the trial court and answered the judge's questions before the plea was accepted. At the post-conviction hearing, however, he testified that he really did not

understand the charge and did not believe that the plea was entered knowingly and voluntarily.

On cross-examination, the petitioner testified that he was aware that his wife and stepdaughter were in the courtroom on the day trial was scheduled to begin. He also acknowledged that he was shown a copy of a letter, which he had written to his wife, which the State was in possession of. The petitioner had not informed trial counsel that he had written this letter. In the letter, the petitioner acknowledged that he had had sex with the victim, but again asserted that it was consensual in nature. He wrote that he wanted the victim to say that the sex had occurred only in 2006. Comments in the letter indicated that the petitioner was attempting to have the victim change statements she had previously made.

Trial counsel was also called to testify at the hearing and stated that he had represented the petition for the entire two years in which the case had remained pending. He stated that he had interviewed witnesses, reviewed discovery, spoke with the petitioner's wife and the victim, and spoke with the petitioner numerous times. According to trial counsel, as he continued to speak with the petitioner as the case unfolded, his story significantly changed. The petitioner originally told him that there had been "lots of sex" with the victim after she turned thirteen. However, he later amended it to say that he had only had sex with the victim once after she turned fifteen. After that change in the story, which occurred around the time trial counsel explained the different sentencing range for rape by an authority figure versus statutory rape by an authority figure, the petitioner was adamant about proceeding to trial on the theory that he had only had sex with the victim one time. Trial counsel sought counsel with the Board of Professional Responsibility on how to handle the situation should the petitioner elect to testify at trial.

Trial counsel acknowledged there was overwhelming proof of guilt on the petitioner's part, including a video he had made of himself and the victim having sex, an aborted pregnancy by the victim, and a second pregnancy carried to term and delivered when the victim was fifteen years old. Additionally, the petitioner had made statements to others that he had been having sex with the victim since she was "little," and he had made tape-recorded admissions to his wife and the victim. The petitioner was aware of this proof, and he and trial counsel discussed it.

Trial counsel testified that he had hoped to be able to impeach the victim with a statement which she had made to him at his office in which she recanted her assertion that any sex had occurred prior to the age of thirteen. She did allow trial counsel to take a recorded statement to that effect. Trial counsel also had the victim to take a polygraph test, which she passed, stating there was no sexual activity prior to that age. Because the petitioner had not yet made the assertion that he only had sex with victim once, that was not

addressed in the test. Trial counsel testified that he was as prepared for trial as he could be based upon the facts of the case. He did testify that, if they had tried the case, he was certain, the petitioner would have been convicted.

The State had offered the petitioner a fifteen-year plea agreement, which remained open the Wednesday prior to the scheduled Monday trial, but the petitioner had rejected the offer. Trial counsel testified that he and the petitioner met on Friday at the jail. During the meeting, the petitioner became upset and made statements that "the case was not going to trial" and that he did not intend to serve any sentence. Trial counsel testified that these statements were made in a manner which concerned him, and he specifically asked the petitioner if he was thinking of hurting himself. The petitioner did not responsd and went into an "almost robotic state" and again said, "I'm not going to be serving a sentence, and I'm not going to be trying this case, and we're not going to have a trial on Monday." When trial counsel left the jail, he relayed these facts to a mental health worker and asked him to check on the petitioner over the weekend. On Monday, the petitioner was "irate" with him and informed him that he had been on suicide watch all weekend.

When the jury entered the courtroom on the day of the trial, the petitioner became "very loud." Trial counsel testified that he believed that the petitioner finally realized that the situation was "real," that he was going to trial. He went into loud histronics and began yelling, "help me, help me." The petitioner was crying out for Jesus and trial counsel to help him. At this point, the petitioner told trial counsel that he wanted to accept the fifteen-year plea offer. However, the State's offer now was for twenty-years. The petitioner initially did not want to accept the offer, but after thirty minutes of discussion, with more hysterics, the petitioner finally decided to accept the offer.

When asked, trial counsel testified that he did not believe that being on suicide watch had affected the petitioner's decision. He believed that the petitioner had simply panicked when he realized time was running out and when he actually saw the jury and the victim in the courtroom. While acknowledging that he did recommend that the petitioner accept the agreement, trial counsel denied that he had coerced the petitioner into accepting the agreement. Trial counsel stated that the petitioner was lucid and was able to make the decision whether to accept the plea agreement.

After hearing the evidence presented, the post-conviction court, accrediting trial counsel's testimony, denied the petition for relief. The petitioner has timely appealed.

**Analysis**

On appeal, the petitioner contends that the post-conviction court erred in denying his

petition for relief. He argues that his plea was not entered knowingly and voluntarily because he was denied the effective assistance of counsel. Specifically, he contends that his plea was coerced by trial counsel's actions.

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31).

To succeed in a challenge for ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably-based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel, however, is dependent upon a showing that the decisions were

made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, conclusions of law are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458.

In the order denying relief, the post-conviction court made the following relevant findings:

> The Petitioner claims that his plea was not knowingly and voluntarily entered following counsel's arranging for him to be placed on suicide watch in jail the weekend before trial. He asserts that the conditions which he endured those days prior to trial resulted in coercion and accordingly affected his decision to enter the guilty plea agreement. Petitioner also claims that counsel did not adequately prepare a defense to the charges against him. He alleges that counsel did not properly investigate and present witness testimony, thus depriving him of any plausible defense.

> . . . .

> The Friday prior to trial, the Petitioner and [trial counsel] met to discuss the case. Petitioner evidently became upset with counsel and informed him that he could not serve a sentence in prison and that there would be no trial. According to [trial counsel], the Petitioner appeared to lapse into a non-responsive, "robotic" state. [Trial counsel] became concerned for Petitioner's safety and relayed his concern to the Sheriff's Office, who placed him under suicide watch for the entire weekend.

> During his placement under watch in the jail, the Petitioner stated that he was forced to endure humiliating, uncomfortable living conditions which took a toll on his mental and emotional well-being. He claims that counsel was displeased with Petitioner, so he used his power to arrange for this mistreatment and then coerced him to enter the guilty plea by stating that he would be convicted if the matter were tried.

-7-

The credibility and weight of witnesses' testimony is to be resolved by the post-conviction court. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). On the morning of trial, the State produced a letter written by the Petitioner's to his wife begging for her cooperation in the case. In the letter, he makes several statements such as, "I'm losing my mind and my spirit and will to live," and "I go to bed and pray to God to not wake me up." At one point, he states, "They can't get time from a dead man," which is then followed by a statements that he is not suicidal.

Furthermore, at the evidentiary hearing on this matter, the Petitioner entered into evidence the mental health records and notes kept by the Sheriff's Office. Evidently, upon being placed on suicide watch, the Petitioner stated, "I probably confused my lawyer. I'm not gonna kill myself but I know i[t] looked that way." Petitioner went on to state that he did not think counsel was working hard enough. He admits that [trial counsel] "was not urgent enough, so I said that stuff to create urgency so he would work harder for me."

Taking into consideration several portions of the letter, in conjunction with the statements of [trial counsel] and the mental health notes from the Sheriff's Office, the Court tends to believe the testimony of counsel. It is wholly conceivable that [trial counsel] was convinced of the Petitioner's mental instability and that his concern was genuine. The Court is of the opinion that [trial counsel's] belief that he was obligated to inform the Sheriff's Office of this concern was prudent under the circumstances. This issue is without merit.

. . . .

[Trial counsel] testified at the evidentiary hearing that he was prepared to go forward and try the matter since the Petitioner had adamantly maintained his innocence and would not accept any plea offers made by the State. He believes, however, that upon the entry of the prospective jurors into the courtroom, reality set in and the Petitioner began to panic. The Petitioner immediately became nervous and begged for help, saying that he would accept the offer of fifteen years originally conveyed, but the State would only agree on twenty years.

In the opinion of [trial counsel], the Petitioner was amenable to entering a guilty plea because it had become apparent that his wife was not going to comply with his wishes expressed in the letter. Her delivery of the Petitioner's

letter to the State seemed to imply that she was willing to cooperate with the prosecution and that she was not going to allow him to influence her or the Victim.

With regard to Petitioner's claims of coercion and denial of his Sixth Amendment rights, the Court is of the opinion that the Petitioner has failed to prove such assertions by clear and convincing evidence. The fact that [trial counsel] is an exceptionally skilled criminal defense attorney with highly professional and ethical values makes it difficult to credit the Petitioner's argument to the contrary. As previously noted, the evidence against the Petitioner was particularly damning, thus proving to be quite a challenging case to defend.

Considering the foregoing, the Court is not inclined to believe that [trial counsel] forced the Petitioner to waive his right to a jury trial and instead enter a guilty plea. Moreover, it does not appear as though Petitioner has proven by clear and convincing evidence that counsel's representation was ineffective.

Following our review of the record, we conclude that nothing preponderates against the findings made by the post-conviction court. It is apparent for our reading of the post-conviction court's findings that the court specifically accredited trial counsel's testimony over that of the petitioner's. As this court has repeatedly held, findings of credibility are to be made by the trier of fact, and this court will not reweigh or re-evaluate such findings. *See Burns*, 6 S.W.3d at 461. Trial counsel testified that, while he advised the petitioner to accept the plea agreement, no coercion was involved. Advising a client to accept an offer from the State does not equate to coercion. Nor does informing a client that he will likely be convicted if he proceeds to trial. Trial counsel simply gave the petitioner his best advice based upon the facts and circumstances at the time.

Nor has the petitioner proven that being on suicide watch the previous weekend resulted in a coerced plea. As pointed out by the post-conviction court, trial counsel was merely fulfilling his duties to his client by advising the jail personnel about his legitimate concerns regarding the petitioner's actions and state of mind. First, the petitioner has failed to prove that trial counsel maliciously made the decision in order to coerce a plea, but more importantly, he failed to establish that the fact that he was on suicide watch affected his decision on whether to accept the plea. He offers only his own self-serving testimony, which, as noted, the post-conviction court discredited. There is simply no foundation for the claim. The petitioner's own statements in the letter written to his wife belie his claim.

Additionally, the record establishes that the petitioner stood before the trial court and was advised of his rights prior to the acceptance of his plea. He was advised of possible sentences, and he was aware of the evidence against him. The petitioner, in open court, testified that he was entering the plea freely and voluntarily. He cannot now disavow his own statements and maintain credibility with the court. Based upon the record before us, we cannot conclude that the petitioner has put forth any evidence which preponderates against the post-conviction court's determinations. As such, he is entitled to no relief.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE